

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00071-CV

_____

SYDNEY RAYM F/K/A SYDNEY DETHLOFF, Appellant

V.

TUPELO MANAGEMENT, LLC, Appellee

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. C2019119

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Sydney Raym, formerly known as Sydney Dethloff, appeals pro se from a summary judgment. To the extent that Raym's arguments are adequately briefed, she challenges the standing of Appellee Tupelo Management, LLC, and whether Tupelo satisfied its summary judgment burden.

We hold that Tupelo had standing. We also hold that Tupelo conclusively proved its promissory estoppel claim but that Tupelo failed to establish its quantum meruit claim as a matter of law. We therefore affirm in part and reverse and remand in part.

## I.    BACKGROUND

In late 2018, Raym and Tupelo entered a joint venture to flip a house. Tupelo would provide the funds to acquire and renovate the property, and Raym promised to reimburse Tupelo for the costs. In exchange, they would split the net proceeds of the sale 50/50.

Tupelo wired Raym $21,530.78, and Raym used the funds to purchase the property. Tupelo then hired a company called DNA Construction as contractor to perform the renovations. Raym accepted DNA's estimate of costs. Tupelo incurred $51,535 in bills to DNA as the renovations progressed.

But disagreements arose over cost increases and the quality of DNA's work. Raym ultimately refused to reimburse Tupelo for any of its expenses on the property.

Tupelo took legal action. It recorded an affidavit establishing a constitutional lien on the property and sent Raym notice of the lien. Tupelo then filed this suit, pleading claims for declaratory judgment and a purchase money resulting trust or a constructive trust, among others.

Tupelo obtained a summary judgment on these claims. As amended, the final order awarded Tupelo a declaratory judgment that imposed a purchase money resulting trust, and it directed Raym to convey title to the property to Tupelo. The order awarded Tupelo $81,415.78 in damages, plus attorney's fees.

Raym appealed. In response to her various challenges, we held that Tupelo had standing to sue, and we upheld the declaratory judgment imposing a purchase money resulting trust and the award of $21,530.78 to compensate Tupelo for the property's acquisition cost. *See Raym v. Tupelo Mgmt., LLC*, No. 02-19-00477-CV, 2020 WL 3865273, at *4, *8 (Tex. App.—Fort Worth July 9, 2020, no pet.) (mem. op.). However, we held that the declaratory judgment claim for imposition of a trust could not support any of the other relief that the trial court awarded. *Id.* at *8. So, we affirmed the judgment to the extent that it imposed a trust in the amount of $21,530.78, and we reversed the remainder of the judgment. *Id.*

On remand, Tupelo amended its petition to add claims for promissory estoppel, quantum meruit, trespass to try title, and foreclosure of its constitutional mechanic's lien, among others. Tupelo then moved for summary judgment on these new claims.

3

Raym filed a response, but the trial court granted Tupelo's motion to strike her evidence.

The trial court granted a partial summary judgment, awarding Tupelo $59,535 each on the quantum meruit and promissory estoppel claims, granting foreclosure on its constitutional mechanic's lien claim, and awarding $70,907.50 in attorney's fees along with conditional appellate attorney's fees. The $59,535 was intended to compensate Tupelo for sums it incurred to renovate the property ($51,535) and for its efforts in managing the renovation project ($8,000).

Tupelo nonsuited its remaining claims without prejudice, and the trial court rendered a final judgment with the same relief as the partial summary judgment plus the $21,530.78 trust. Raym appeals.

## II.    INADEQUATE BRIEFING

Raym's issues have little or no correspondence with what is argued in the body of her brief. Some issues are posed as multifarious clusters of questions.[1] Other issues

---

[1]For instance, she states her second issue as follows:

> Was it proper for the trial court to grant relief upon the Quantum Meruit claim? There were multiple genuine issues of material fact regarding this claim. Where was the agreement? Where did the management fees come into play? Where is the proof of the renovations as compared to the scope of the bid presented in Tupelo's evidence? Did Tupelo furnish materials and labor or did DNA [C]onstruction? It also contradicts a Promissory Estoppel claim.

"An issue is multifarious when it generally attacks the trial court's order with numerous arguments." *Hamilton v. Williams*, 298 S.W.3d 334, 338 n.3 (Tex. App.—Fort Worth

are general pleas for fairness without any legal grounds for relief.[2] Most of the issues are not supported by any argument or authority.

"Although we liberally construe pro se briefs, litigants who represent themselves are held to the same standards as litigants represented by counsel." *In re P.S.*, 505 S.W.3d 106, 111 (Tex. App.—Fort Worth 2016, no pet.). "The Texas Rules of Appellate Procedure require that a brief 'contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.'" *Id.* (quoting Tex. R. App. P. 38.1(i)). Adequate briefing is not achieved by merely uttering brief conclusory statements, unsupported by legal citations. *Id.* When appellants present a list of long, multifarious issues that do not match up with arguments raised in the body of the brief so that we cannot tell which sections in the brief address which issues, we need only address those arguments raised in the body of the appellant's brief. *See Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835, 841 n.1 (Tex. App.—Fort Worth 2003, pet. denied).

There are only three arguments in Raym's brief that are supported by at least some authority. We address those arguments now.

---

2009, pet. denied). We may disregard any issue that is multifarious, or we may consider it if we can determine, with reasonable certainty, the error about which complaint is made. *Id.*

[2]For example, her seventh issue is couched in open terms that do not suggest any legal grounds for relief: "Is it just to allow an entity such as Tupelo, and individuals such as Claire and Kenneth Coggins to intimidate and harass in a legal way against a USA citizen who was just trying to build something and provide for her children?"

## III. STANDING

Raym's first argument is that Tupelo lacked standing to sue. But Raym raised a similar challenge to Tupelo's standing in a prior appeal. *See Raym*, 2020 WL 3865273, at *4. We determined that Tupelo had standing, *see id.*, and that determination is now the law of the case. Under the law-of-the-case doctrine, a decision rendered in a former appeal of a case is generally binding in a later appeal of the same case. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012). The doctrine's purpose is to bring an end to litigation by winnowing the issues in each successive appeal, fostering efficiency and uniformity in the decision-making process. *Id.* "Having decided an issue previously, a court of appeals is not obligated to reconsider the matter in subsequent appeals." *Nw. Indep. Sch. Dist. v. Carroll Indep. Sch. Dist.*, 441 S.W.3d 684, 688 (Tex. App.—Fort Worth 2014, pet. denied) (op. on reh'g en banc).

Raym offers no reason to revisit our determination that Tupelo had standing to sue, and we decline to do so.

## IV. PROMISSORY ESTOPPEL & QUANTUM MERUIT

Next, Raym argues that Tupelo did not prove as a matter of law that it was entitled to judgment on its promissory estoppel and quantum meruit claims.

### A. Summary Judgment Standard

We review an order granting summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference in the nonmovant's favor. *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 293 (Tex. 2020).

As the party moving for traditional summary judgment, Tupelo had the burden to prove that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law. *Id.* A plaintiff satisfies its initial summary judgment burden if it conclusively proves all essential elements of its cause of action. *Charles Glen Hyde, Nw. Reg'l Airport, Inc. v. Nw. Reg'l Airport Prop. Owners Ass'n, Inc.*, 583 S.W.3d 644, 648 (Tex. App.—Fort Worth 2018, pet. denied). "Testimony by an interested witness may establish a fact as a matter of law only if the testimony could be readily contradicted if untrue, and is clear, direct and positive, and there are no circumstances tending to discredit or impeach it." *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 207 (Tex. 2021). If the movant carries its initial burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).

## B. Promissory Estoppel

When a promisor induces substantial action or forbearance by another, promissory estoppel prevents any denial of that promise if injustice can be avoided only by enforcement. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005) (orig. proceeding). Although primarily a defensive matter, promissory estoppel is also a cause of action available to a promisee who has detrimentally relied on an otherwise unenforceable promise. *Severs v. Mira Vista Homeowners Ass'n, Inc.*, 559 S.W.3d 684, 701 (Tex. App.—Fort Worth 2018, pet. denied). "If a promisee has reasonably and detrimentally relied on an otherwise unenforceable promise, he may have a cause of

7

action for promissory estoppel." *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 673 (Tex. App.—Fort Worth 2010, no pet.). In a promissory estoppel action, a plaintiff's recovery is limited solely to reliance damages, which are the amounts necessary to restore the plaintiff to the position in which she would have been had she not relied on the promise. *Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965); *Lucas v. Ryan*, No. 02-18-00053-CV, 2019 WL 2635561, at *18 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.). "[T]he weight of authority in Texas is that attorney's fees are recoverable under Section 38.001(8) of the Texas Civil Practice[] & Remedies Code in a promissory estoppel claim." *Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 528 (Tex. App.—Eastland 2015, pet. denied). The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance on the promise by the promisor, and (3) substantial detrimental reliance by the promisee. *Rice*, 324 S.W.3d at 673.

Tupelo proved all three elements of promissory estoppel as a matter of law. In her affidavit, Tupelo's principal Claire Coggins described how Raym promised to reimburse Tupelo for the cost of purchasing and renovating a house.[3] Coggins testified

---

[3]Tupelo's promissory estoppel claim involves real estate, which would seem to raise the issue of the statute of frauds. Under the statute of frauds, certain agreements, including a contract for the sale of real estate, are not enforceable unless the promise or agreement, or a memorandum of it, is in writing and signed by the person to be charged with the promise or agreement or by someone legally authorized to sign for him. *Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 727 (Tex. 2020) (quoting Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(4)). For promissory estoppel to act as an exception to the statute of frauds, the promisor must have promised to sign a written document complying with the statute of frauds. *Bearden Investigative Agency, Inc. v. Melvin*, No. 2-02-

that Raym reviewed and accepted an estimate of costs for the renovation project and that she was periodically provided with invoices as the project progressed. However, Raym never told Tupelo to stop work on the project or that she had changed her mind until Tupelo had paid for the work to be completed or very nearly so. At that point, Raym began to dispute the cost and quality of the renovations, and she demanded to see records for the work performed. The disagreements continued, Coggins explained, until it was clear that Raym was not willing to reimburse Tupelo as she had originally agreed, "even though all the work was performed and expenditures paid in reliance upon [Raym's] prior agreement to reimburse [Tupelo] for those costs." This evidence was uncontradicted, clear, direct, positive, and free from any circumstances tending to undermine it. *See Aerotek*, 624 S.W.3d at 207. Also submitted as summary judgment evidence were business records and discovery responses documenting the $51,535 that Tupelo incurred in renovation costs. This evidence is sufficient to carry Tupelo's summary judgment burden to show entitlement to summary judgment with respect to

---

078-CV, 2003 WL 194729, at *7 (Tex. App.—Fort Worth Jan. 30, 2003, no pet.) (mem. op.).

But the statute of frauds does not apply where, as here, "a real estate transaction is merely incidentally involved." *Bridewell v. Pritchett*, 562 S.W.2d 956, 958 (Tex. App.—Fort Worth 1978, writ ref'd n.r.e.). "[A]n agreement between two or more persons for the joint acquisition of land is not a contract for the sale of land, and hence is not required by our statute of frauds to be in writing." *Gardner v. Randell*, 7 S.W. 781, 782 (Tex. 1888); *Bradley v. Bradley*, 540 S.W.2d 504, 510 (Tex. App.—Fort Worth 1976, no writ). The statute of frauds therefore does not apply to Tupelo's claims concerning its joint venture with Raym to acquire and renovate real property.

$51,535 of the $59,535 that the trial court awarded on the promissory estoppel claim. And Raym has not adequately briefed her challenge to the $70,907.50 in attorney's fees that were awarded under this theory. *See* Tex. R. App. P. 38.1; *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020).

## C.    Quantum Meruit

This leaves only the question of whether the trial court was justified in awarding a further $8,000 to compensate Tupelo for the value of its project management services. To answer that question, we ask whether Tupelo conclusively proved its entitlement to that amount under its quantum meruit claim.

Quantum meruit is an equitable remedy based upon the promise implied by law to pay for beneficial services rendered or materials furnished and knowingly accepted. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018). Recovery in quantum meruit will be had when nonpayment for the services rendered or materials furnished would result in an unjust enrichment to the party benefitted by the work. *Id.* at 741. As a general rule, the trial court, not the jury, determines the expediency, necessity, or propriety of equitable relief. *Id.* To recover under quantum meruit, a claimant must prove that (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing

10

such services was expecting to be paid by the person sought to be charged. *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 199 (Tex. App.—Fort Worth 2006, no pet.).

Tupelo did not prove these elements as a matter of law. Coggins vaguely averred that she had contributed "time, resources[,] and work" to the project, for which the reasonable and customary value in Hood County, Texas and the surrounding counties was $8,000. However, left unaddressed was what that work might have consisted of or how much time it might have taken. Conclusory statements are not proper summary judgment proof. *Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 467 (Tex. App.—Fort Worth 2020, no pet.).

Nor can we deduce from the record what those services might have been. The record reflects only one task that Coggins actually performed to assist with the project: hiring DNA Construction to renovate the property. While Tupelo may well have rendered other services in connection with the renovations, those services are not mentioned in the summary judgment record. We cannot say that this hiring decision, standing alone, conclusively proves Tupelo's entitlement to $8,000 on its quantum meruit claim.[4]

---

[4]Briefly, Raym also contends that allowing Tupelo to prevail on its quantum meruit claim would contravene Texas Property Code Section 53.151, which provides in relevant part that a creditor of an original contractor may not collect or enforce a security interest against money that the owner owes to the original contractor. Tex. Prop. Code Ann. § 53.151(a). However, Tupelo was not a creditor of the contractor DNA Construction; DNA Construction owed no money to Tupelo. Instead, Tupelo owed money to DNA Construction, making it the debtor of a contractor. Because Tupelo was not the creditor of a contractor, this section does not apply.

"When contested fact issues must be resolved before equitable relief can be determined, a party is entitled to have that resolution made by a jury." *Hill*, 544 S.W.3d at 741 (cleaned up). Because fact issues persist, we agree with Raym that Tupelo did not conclusively prove its quantum meruit claim or its entitlement to the remaining $8,000.

## V. CONCLUSION

We affirm the summary judgment to the extent that it awards $51,535 in damages, $21,530.78 in a purchase money resulting trust, $70,907.50 in attorney's fees, appellate attorney's fees, and foreclosure of Tupelo's mechanic's lien to the extent of $51,535. We reverse the summary judgment as to the remaining $8,000 and remand for further proceedings.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: January 6, 2022

12