**AFFIRMED and Opinion Filed June 28, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00604-CV**

**LEGAL CONCIERGE, INC., Appellant**
**V.**
**DAVIS, CEDILLO & MENDOZA, INCORPORATED, Appellee**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-06283-2019**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Kennedy
Opinion by Justice Nowell

Appellant Legal Concierge, Inc. (LCI) appeals the directed verdict dismissing its claims with prejudice against appellee Davis, Cedillo & Mendoza, Incorporated (DCM).  LCI argues the evidence is legally and factually sufficient to support its quantum meruit claim, and the trial court erred by granting the directed verdict on DCM's affirmative defenses.  We affirm.

## Background

LCI offers on-site trial management and IT services to law firms such as DCM.  In 2014, LCI hired Roman Rosas, an expert in trial management and IT

services.  Before joining LCI, Rosas had a fifteen-year relationship with DCM in which he assisted DCM's clients in approximately thirty trials around the country. His services included editing video, creating graphics, presenting exhibits during trial, and providing courtroom support/logistics.  DCM often recommended Rosas to its clients because of his positive reputation.

Throughout DCM's relationship with Rosas, there were various payment arrangements for how Rosas and LCI billed services and how LCI was paid: sometimes Rosas sent LCI's invoices to DCM and DCM included the invoice in the client's bill and other times DCM's clients paid Rosas directly.  Such arrangements were usually dictated by DCM's client preferences.

In 2015, DCM contacted LCI, through Rosas, to provide trial management services in a case styled *Jim Weynand v. Olmos Equipment, Inc. and Larry Struthoff, et al.* (the OEI suit).  There was no written contract for his services, but itemized bills indicated Rosas provided war room setup, courtroom IT support, trial presentation, and witness preparation.  LCI sent invoices to DCM for the services it provided during the OEI trial, but DCM did not remit payment.

LCI eventually sought payment directly from OEI; however, OEI declared bankruptcy.  LCI then filed suit against Larry Struthoff, and others, for breach of contract as a third-party beneficiary and quantum meruit, among other causes of action.  LCI filed a motion for summary judgment, which was granted on May 23,

2018, awarding $124,267.92, which included $115,830.92 in outstanding service fees.

LCI then filed suit on November 18, 2019 against DCM for suit on sworn account[1] and quantum meruit seeking $112,482.71 in damages plus attorney's fees, despite the summary judgment against Struthoff awarding nearly the same damages. The case proceeded to a bench trial, and on May 17, 2023 the trial court granted DCM's motion for directed verdict and dismissed LCI's claims with prejudice. This appeal followed.

### Standard of Review

Although DCM presented a motion for directed verdict in the trial court, the proper motion to make after the plaintiff rests in a bench trial is a motion for judgment. *Bledsoe Dodge, L.L.C. v. Kuberski*, 279 S.W.3d 839, 841 (Tex. App.— Dallas 2009, no pet.). The distinction is important because we review a judgment pursuant to a motion for judgment differently than a directed verdict. *Id.* (citing *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303–04 (Tex. 1988)). Because DCM brought the motion after LCI rested in a bench trial, we will construe DCM's motion for directed verdict as a motion for judgment. *Id.*

The trial court, as the factfinder in a bench trial, may rule on the factual and legal issues at the close of the plaintiff's case in chief. *Id.* In doing so, the trial court

---

[1] LCI has not challenged dismissal of its suit on sworn account.

is presumed to have ruled on both the sufficiency of the evidence and the credibility of the witnesses. *Id.*

When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The point of error should be sustained only if the contrary proposition is conclusively established. *Id.*

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Id.* The court of appeals must consider and weigh all of the evidence and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

**Quantum Meruit**

The right to recover in quantum meruit is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *United States*

–4–

*Catastrophic Re-Constructors, Inc. v. Spencer*, No. 05-14-01150-CV, 2015 WL 7075163, at *5 (Tex. App.—Dallas Nov. 13, 2015, no pet.) (mem. op.) (quoting *Campbell v. Nw. Nat'l Life Ins. Co.*, 573 S.W.2d 496, 498 (Tex. 1978)). To recover under the equitable doctrine of quantum meruit, a plaintiff must establish: (1) valuable services were rendered or materials furnished, (2) for the person sought to be charged, (3) the services and materials were accepted by the person sought to be charged and were used and enjoyed by him, and (4) the person sought to be charged was reasonably notified that the claimant who performed the services or furnished the materials was expecting to be paid by the person sought to be charged. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 736 (Tex. 2018); *Kelly v. Isaac*, No. 05-19-00813-CV, 2020 WL 4746589, at *12 (Tex. App.—Dallas Aug. 17, 2020, pet. denied) (mem. op.). LCI challenges the second and third element on appeal: whether LCI provided its services to DCM, rather than DCM's clients (OEI and Struthoff), and whether DCM accepted and benefitted from the services.

Rosas testified as LCI's main witness and explained his relationship with DCM and LCI. Any interactions between him, LCI, and DCM ran through him. Rosas explained he prepared OEI for trial, performed his services on behalf of OEI to help OEI win, and OEI benefitted from his expertise and services. As part of the trial team, he worked with DCM's paralegals and legal team to present the case on behalf of OEI. Although he was engaged by DCM, he ultimately provided services to the client. If the client did not have a trial, his services would not be needed.

Ricardo Cedillo, a partner with DCM, testified that recommending and engaging experts like Rosas was an important part of trial practice. It was common for DCM to directly engage and hire experts on behalf of the client, and clients often wanted the expert's invoices "funneled through one bill," but that did not mean DCM was responsible for paying the client. DCM did not agree to pay experts it engaged on behalf of the client; instead, the client approved the engagement of the expert because "they are paying for it." In the OEI suit, the Legal Representation Agreement provided that "When necessary or practicable, Firm will engage outside vendors to provide services for Clients. Clients will be responsible for directly satisfying the costs of vendors and service providers." It also stated that "Clients authorize Firm to retain and Clients agree to pay the fees or charges of . . . [experts] to perform necessary services related to the Representation."

Considering the evidence supporting the trial court's ruling, while ignoring any contrary evidence, the evidence is legally sufficient to support the trial court's dismissal of LCI's quantum meruit claim because LCI failed to establish it provided services to DCM and DCM benefitted from its services. *Dow Chem. Co.*, 46 S.W.3d at 241. Instead, the evidence indicates Rosas provided his services to and for the benefit of OEI. We overrule LCI's legal sufficiency challenge.

In support of its factual sufficiency challenge, LCI relies heavily on invoices indicating expenses for meals, trial supplies, and hotel meeting rooms for DCM's trial team during the OEI trial. It argues DCM received the direct benefit of these

–6–

services because its trial team, not OEI, ate the meals and used the supplies and meeting rooms. It maintains any benefit OEI received was "indirect and merely incidental" because LCI's services had no bearing on whether DCM prevailed at trial. LCI also argues DCM exclusively instructed Rosas regarding performance of trial services.

Rosas admitted DCM attorneys told him the day-to-day trial plan, not OEI. However, Rosas testified that he worked with DCM as part of the trial team to present the best case for OEI. He provided his expert services for the benefit of OEI, which included much more than "incidental" expenses like meals and meeting rooms. Considering and weighing all the evidence, we cannot conclude the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* We overrule LCI's factual sufficiency challenge. Accordingly, the trial court properly granted DCM's motion for judgment because LCI failed to present sufficient evidence satisfying the elements of quantum meruit. *Hill*, 544 S.W.3d at 736 (discussing quantum meruit elements).

**Affirmative Defenses**

In its second issue, LCI argues the evidence is insufficient to support DCM's affirmative defenses. Although the trial court briefly referenced an "irreconcilable difference in theories" presented in LCI's motion for summary judgment against Struthoff and its present suit against DCM and a possible "limitations issue with

respect to a couple of the invoices," the court stated, "I'm not able to conclude that there has been evidence presented that would support the elements of the quantum meruit causes of action." Accordingly, the record does not indicate the trial court relied on any of DCM's affirmative defenses when it granted DCM's motion for judgment and dismissed LCI's claims; therefore, we need not address the sufficiency of the evidence in support of DCM's affirmative defenses. TEX. R. APP. P. 47.1. We overrule LCI's second issue.

## Conclusion

We affirm the trial court's judgment.

/Erin A Nowell/

ERIN A. NOWELL
JUSTICE

230604F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LEGAL CONCIERGE, INC.,
Appellant

No. 05-23-00604-CV          V.

DAVIS, CEDILLO & MENDOZA,
INCORPORATED, Appellee

On Appeal from the 471st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 471-06283-2019.
Opinion delivered by Justice Nowell.
Justices Molberg and Kennedy
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee DAVIS, CEDILLO & MENDOZA, INCORPORATED recover its costs of this appeal from appellant LEGAL CONCIERGE, INC.

Judgment entered this 28th day of June 2024.