Opinion issued April 29, 2025



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00305-CV

———————————

## 2017 YALE DEVELOPMENT LLC AND ALLEN J. FISHER, Appellants

## V.

## HOLTZAPPLE NEAL PROPERTIES GROUP LLC, Appellee

On Appeal from the 151st District Court
Harris County, Texas
Trial Court Case No. 2019-40358

## MEMORANDUM OPINION

Holtzapple Neal Properties Group LLC ("HNPG") filed property tax protests for the 2018 and 2019 tax years on behalf of 2017 Yale Development LLC ("2017 Yale"). When 2017 Yale failed to pay for the tax-protest services, HNPG sued 2017 Yale for breach of contract and quantum meruit. It also sued Allen J. Fisher, the

person who asked HNPG to file the protests for 2017 Yale, for breach of contract and fraud. 2017 Yale answered the suit, but Fisher did not, and the trial court entered a default judgment against him. Only the claims against 2017 Yale went to trial. At the jury trial, the trial court directed a partial verdict on liability for HNPG for the 2018 tax year and then submitted the remaining claims and all damages to the jury, which found in HNPG's favor. The trial court entered a final judgment in accordance with the jury's verdict. On appeal, Fisher challenges the default judgment in four issues, and 2017 Yale challenges the judgment on the jury's verdict in five issues. We affirm.

## I.    Background

Through its principal Ray Holtzapple, HNPG provides property tax consulting services and representation in tax protests before the Harris County Appraisal Review Board ("ARB"). On the day property-tax protests were due for the 2018 tax year, Allen Fisher asked Holtzapple to protest the taxes for commercial property owned by 2017 Yale. Fisher, who was affiliated with a property-management company that HNPG was working with on other protests, said he would have 2017 Yale's owner sign "the protest & [HNPG's] agreement."

Later the same day, Fisher sent Holtzapple a Form 50-162, which was electronically signed by Brad Parker as the "Property Owner, Property Management, or Other Person Authorized to Act on Behalf of the Property Owner." The Form

2

50-162 authorized HNPG to represent 2017 Yale in "all property tax matters" concerning the property "until the date indicated or until a written revocation [was] filed with the appraisal district." The line on the Form 50-162 that would indicate an expiration date for HNPG's authority was left blank, leading Holtzapple to believe that HNPG should continue to protest future taxes on 2017 Yale's behalf until he was told otherwise.

Holtzapple timely filed the 2018 tax protest and then worked with Parker and people at Fisher's property-management company to gather information about the property and prepare for the ARB hearing. According to Holtzapple, HNPG expected to be paid for these services. He provided Parker with a copy of a Tax Consultant Agreement stating that HNPG should receive "a contingent fee of 30% of any and all property tax savings," which was defined as "the difference between the [Harris County Appraisal District ('HCAD')] appraised value and the final value of the Property as determined after the protest, multiplied by the latest known tax rate, and/or any tax reduction attributable to obtaining a missing exemption." The Tax Consultant Agreement required invoices to be paid within ten days and provided for interest of one and one-half percent per month on any balances outstanding after thirty days. Neither Parker nor anyone else at 2017 Yale signed the Tax Consultant Agreement.

3

HNPG successfully represented 2017 Yale at the ARB hearing and obtained a reduction of $1,828,704 in the property's appraised value for the 2018 tax year. This reduction in the appraised value translated to $46,199.43 in property-tax savings, applying the definition in the Tax Consultant Agreement. HNPG invoiced 2017 Yale for thirty percent of that amount, which was $13,859.92. When HNPG invoiced 2017 Yale, Holtzapple reiterated the need for Parker to return the executed Tax Consultant Agreement so both sides would "have a proper document in place." But the Tax Consultant Agreement remained unsigned, and the invoice went unpaid.

Even though 2017 Yale had not paid HNPG for the 2018 tax year, Holtzapple believed he had a duty to protest 2017 Yale's property taxes for the 2019 tax year because the Form 50-162 had not expired and nobody from 2017 Yale had terminated HNPG's services. So, HNPG filed a second property-tax protest on 2017 Yale's behalf. And HNPG succeeded a second time in reducing the appraised value of the property—this time, by $1,425,457. HNPG invoiced 2017 Yale for thirty percent of the property tax savings, which was $12,624.63. 2017 Yale did not pay that invoice either.

## A. HNPG sues and obtains a no-answer default judgment against Fisher

HNPG sued 2017 Yale, Fisher, and Parker, seeking to recover its unpaid fees for the 2018 and 2019 tax year protests under several theories of liability. Against

2017 Yale, HNPG alleged claims for breach of contract and quantum meruit. Against Fisher and Parker, HNPG alleged claims for breach of contract and fraud.

2017 Yale and Parker answered, but Fisher did not. After several unsuccessful attempts to personally serve Fisher, HNPG moved for substituted service and attached an affidavit from a process server who had attempted to serve Fisher at his residence seven times. Fisher never answered the door, even though a car registered in his name was parked in the driveway on a few occasions when service was attempted.

The trial court granted HNPG's motion and authorized substituted service either by (1) leaving a copy of the citation, petition, and substituted-service order with anyone over sixteen years old at Fisher's residence or (2) firmly affixing the same service documents to Fisher's front door. The order also required HNPG to mail a copy of the service documents to Fisher's residence by certified mail, return receipt requested, and regular mail. Fisher's signature on the green card was not necessary to complete service.

A little less than one month later, the process server filed an affidavit stating that he had affixed the service documents to Fisher's front door and mailed copies as instructed. He further stated that the regular-mail envelope was not returned and that the certified-mail copy was delivered, even though the green card was not signed. The return of service did not include a copy of the green card. Instead, the

return included the electronic tracking information for the certified mail, which did not list a delivery address but stated that the "item was delivered to the front desk, reception area, or mail room" on the date in the process server's affidavit.

When Fisher still did not answer, HNPG moved for and obtained a no-answer default judgment against him for damages, pre-judgment interest, and attorney's fees.

**B.      HNPG proceeds to trial against 2017 Yale**

HNPG ultimately nonsuited its claims against Parker and proceeded to trial against 2017 Yale.  Before trial, however, discovery disputes led to several sanctions against 2017 Yale.  First, after finding that 2017 Yale had refused to answer HNPG's discovery requests despite being ordered to do so more than once, the trial court ordered a presumption that 2017 Yale's defenses lacked merit.  And it prohibited 2017 Yale from introducing evidence in support of its affirmative defenses at trial.

Second, the requests for admissions that 2017 Yale failed to answer were deemed admitted, including admissions that:

1.      The [F]orm 50-162 . . . was electronically signed by Brad Parker.

2.      Brad Parker was authorized to sign [the Form 50-162] on behalf of 2017 Yale.

3.      2017 Yale appointed HNPG and Ray Holtzapple as its agents regarding all property tax matters concerning [the property].

4.      The ARB Panel Recommendation for tax year 2018 . . . represents the result of the tax protest for [the property].

6

5. The 2018 tax protest resulted in a reduction of [the property's] appraised value by $1,838,704.

6. 2017 Yale, through Brad Parker, received the invoice [for the 2018 tax protest].

7. 2017 Yale, through Brad Parker, did not pay any amount of the invoice [for the 2018 tax protest].

8. Until filing its answer in this lawsuit, neither 2017 Yale nor Brad Parker ever communicated to Ray Holtzapple or HNPG that it did not owe the amount in the invoice [for the 2018 tax protest].

9. The ARB Panel Recommendation for tax year 2019 . . . represents the result of the tax protest for [the property].

10. The 2019 tax protest resulted in a reduction of [the property's] appraised value by $1,425,457.

11. 2017 Yale, through Brad Parker, received the invoice [for the 2019 tax protest].

12. 2017 Yale, through Brad Parker, did not pay any amount of the invoice [for the 2019 tax protest].

13. Until filing its answer in this lawsuit, neither 2017 Yale nor Brad Parker ever admitted to Ray Holtzapple or HNPG that it did not owe the amount in the invoice [for the 2019 tax protest].

14. Neither 2017 Yale nor anyone acting on its behalf ever informed Ray Holtzapple or HNPG that 2017 Yale was terminating Ray Holtzapple's or HNPG's services as tax agents.

15. Brad Parker sent the email admitted at trial as [HNPG's] Exhibit 6 to Ray Holtzapple on July 7, 2018.

Additionally, 2017 Yale was ordered to pay HNPG's attorney's fees in an amount to be determined after trial.[1]

---

[1] The sanctions order recites the trial court's failed attempts to compel 2017 Yale's compliance with discovery rules via lesser measures, like refusals to allow 2017

When the case was called to trial, HNPG pursued three theories of liability. HNPG argued that 2017 Yale had breached an express contract with the terms stated in the Tax Consultant Agreement. Alternatively, HNPG argued that 2017 Yale had breached an implied contract with an open price term or was liable for the reasonable value of HNPG's tax-protest services under quantum meruit.

The deemed admissions were read to the jury, and Holtzapple and Parker were the only two witnesses to testify. At the close of HNPG's case in chief, HNPG moved for a directed verdict, arguing that the testimony and deemed admissions eliminated any factual disputes as to 2017 Yale's liability. The trial court agreed in part. Specifically, the trial court (1) granted directed verdicts on two claims for tax year 2018 (breach of an implied contract with an open term and quantum meruit); (2) denied a directed verdict on the third claim for tax year 2018 (breach of an express contract); and (3) denied a directed verdict on all claims for tax year 2019.

The remaining claims and all damages were submitted to the jury. The jury rejected HNPG's express contract claims for both tax years but otherwise found in HNPG's favor, awarding HNPG $13,859.82 in damages for the 2018 tax year and $9,000 in damages for the 2019 tax year on both the breach-of-implied-contract and quantum-meruit claims.

---

Yale to withdraw its deemed admissions, and the trial court's conclusion that alternative measures, like charging 2017 Yale with the expenses of discovery or staying further proceedings, would not remedy the prejudice to HNPG.

8

The trial court entered a final judgment in accordance with the jury's verdict. The final judgment awarded HNPG more than $60,000 in attorney's fees for trial and additional amounts for appeals as sanctions and incorporated the earlier default judgment against Fisher. As to 2017 Yale, the final judgment ordered pre- and post-judgment interest of seven and one-half percent per annum, and as to Fisher, the final judgment ordered pre- and post-judgment interest at the alleged contract rate of one and one-half percent per month.

## C.    The post-trial and post-judgment proceedings

Both Fisher and 2017 Yale moved for a new trial. In his motion for new trial, Fisher argued that the default judgment should be set aside because he did not receive "service of any papers" at his home or by mail. He also argued that service was not in accordance with the trial court's order for substituted service. In its motion for new trial, 2017 Yale argued that a new trial was required because the trial court had unfairly limited 2017 Yale's time for closing argument, that some of the jury's findings were not supported by sufficient evidence, and that HNPG had waived any recovery of attorney's fees by failing to submit a question on reasonableness and necessity to the jury. Neither Fisher's motion nor 2017 Yale's motion was set for a hearing.

In response to Fisher's service-related complaints, HNPG moved to amend the return of service to "make clear that service was completed in conformity with

9

the terms of the [substituted-service] order." The trial court granted the motion and signed an order amending the return of service as follows:

> The return of service as to Defendant Allen J. Fisher, originally filed May 22, 2020, is amended as attached to this Order and reflects proper service upon Defendant Fisher in conformity with this Court's April 27, 2020 Order Granting Motion for Substituted Service of Process. The Amendment relates back to the May 22, 2020 filing of the original return of service.

HNPG also opposed the other grounds for relief in Fisher's and 2017 Yale's motions for new trial.

The motions for new trial were overruled by operation of law, and both Fisher and 2017 Yale appealed.

## II. Fisher's Appeal of Default Judgment

Fisher raises four issues challenging the default judgment against him.

### A. Service of process

In his first issue, Fisher argues that the trial court erred by overruling his motion for new trial and refusing to set aside the default judgment against him because there was no valid service of process. Specifically, Fisher asserts that HNPG failed to comply with the order for substituted service and that he never received service at his residence or by mail.

#### 1. Standard of review and applicable law

Fisher is appealing after his motion for new trial seeking to set aside the default judgment was overruled by operation of law. A trial court's decision to

10

overrule a motion for new trial is reviewed for abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (per curiam).

When a default judgment is attacked by a motion for new trial or bill of review, the "parties may introduce affidavits, depositions, testimony, and exhibits to explain what happened." *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 573–74 (Tex. 2006). This allows the parties, in the trial court, to address the critical question in a default judgment: "Why did the defendant not appear?" *Id.* at 574. "If the answer is 'Because I didn't get the suit papers,' the default judgment generally must be set aside," except when nonreceipt is uncorroborated or it was the defendant's fault.[2] *Id.*

Fisher contends that service of process was defective. A trial court's jurisdiction depends on citation issued and served in a manner provided for by law. *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990). Unless the record affirmatively shows an appearance by the defendant, proper service of citation on the defendant, or a written waiver of service at the time the default judgment is entered, the trial court does not have in personam jurisdiction to enter the default judgment. *See id.*; *Creaven v. Creaven*, 551 S.W.3d 865, 869–70 (Tex. App.—Houston [14th Dist.]

---

[2] If the defendant received the suit papers, the defendant challenges the default judgment by establishing the three elements from *Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 126 (Tex. 1939).

2018, no pet.). A default judgment is improper against a defendant who has not been served in strict compliance with the law. *Wilson*, 800 S.W.2d at 836.

Generally, a defendant must be served in person or by registered or certified mail, return receipt requested. *See* TEX. R. CIV. P. 106(a). But a plaintiff who unsuccessfully attempted to serve process by these methods may ask the trial court to order a substitute method of service. *Id.* 106(b)(2). When citation is made by an alternative method of service under Rule 106(b), proof of service must be made in the manner ordered by the court. *Id.* 107(f); *see Creaven*, 551 S.W.3d at 870 (recognizing only authority for substituted service is order itself).

### 2. Evidence regarding service

In his motion for new trial, Fisher attempted to place himself in the "I didn't get the suit papers" class of cases. The motion expressly denied receipt of service. And Fisher submitted a sworn declaration stating, in relevant part, "I was never served with any process in the above captioned lawsuit, nor have I ever received any petition, or exhibits either in person, or left at my home or by mail." In Fisher's view, his sworn declaration refuting service of the case documents required the trial court to set aside the default judgment.

Assuming without deciding that Fisher preserved this issue, we reject it. The amended return of service states that the officer served Fisher by affixing copies of the case documents to Fisher's front door and mailing same to Fisher in accordance

12

with the order of substituted service. Although the law makes no presumptions in favor of valid issuance, service, and return of citation in an attack on a default judgment, an officer's return is prima facie evidence of the facts it recites and cannot be rebutted by the moving party's uncorroborated evidence. *See Fid. & Guar. Ins. Co.*, 186 S.W.3d at 573–74; *W. Columbia Nat'l Bank v. Griffith*, 902 S.W.2d 201, 206 (Tex. App.—Houston [1st Dist.] 1995, writ denied). That is, the moving party cannot defeat the prima facie showing of an officer's return with a bare denial of service. *Min v. Avila*, 991 S.W.2d 495, 501 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Instead, he must come forward with "evidence of supporting facts and circumstances" to corroborate his denial. *Id.* This evidence may be circumstantial and need not consist of the testimony of other witnesses. *Seaprints, Inc. v. Cadleway Props., Inc.*, 446 S.W.3d 434, 440 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Min*, 991 S.W.2d at 501, 503). Indeed, this Court has previously observed that the moving party's own testimony may serve as corroborating evidence in this regard: "The prohibition against considering the [moving party's] evidence applies only if the evidence does not rise above mere denial of service . . . ." *Min*, 991 S.W.2d at 503. Whatever the source of the evidence, the test "is whether it demonstrates independent facts and circumstances that support, and thus corroborate, the [moving party's] claim." *Id.*

Fisher's evidence fails this test because his sworn statements that he "was never served with any process" and "never received" any case documents in person, at home, or by mail are mere denials of service that lack any corroborating facts or circumstances.[3] *See id.* The deficiency in Fisher's proof is plain from a review of other cases in which the party challenging a default judgment offered some corroborating evidence in their own testimony. *See, e.g.*, *Ward v. Nava*, 488 S.W.2d 736, 737 (Tex. 1972); *Sanders v. Harder*, 227 S.W.2d 206, 209 (Tex. 1950); *Min*, 991 S.W.2d at 503.

For example, in *Ward*, the party challenging service offered only his own affidavit as evidence. *See* 488 S.W.2d at 737. But in addition to stating that he was not served, he described a telephone call from a person he did not know, who asked about the lawsuit, thus prompting him to search his home for the suit papers, which he ultimately located. *Id.* From these circumstances, he concluded the papers had been left in his mailbox and brought into his home by his children. *See Ward v. Nava*, 483 S.W.2d 501, 511 (Tex. App.—Houston [14th Dist.] 1972), *rev'd*, 488

---

[3]     On appeal, Fisher cites an American Bar Association article addressing the ways in which the postal service altered their certified mail procedures during the COVID-19 pandemic. Fisher offers this article as support that the postal service did not deliver mail directly to customers during the time of service in this case. But the order for substituted service deemed service complete when the case documents were mailed, not upon delivery.

14

S.W.2d 736 (Tex. 1972). The Supreme Court of Texas concluded the testimony was "some corroborating evidence" of lack of service. *Ward*, 488 S.W.2d at 737–38.

In *Sanders*, a trespass-to-try-title action, the only evidence offered to defeat the officer's return came from Mr. and Mrs. Sanders, the parties who challenged service. 227 S.W.2d at 209. The Sanderses stated the land at issue had been purchased in 1925 and claimed as their homestead when they married in 1933. *Id.* They showed that until a writ of scire facias was served on them to establish title, they had possession of the land, without any interruption by Harder, during the seven-year period after rendition of the default judgment on which Harder relied. *Id.* The Sanderses also established they had improved the land, again without interruption by Harder. *Id.* The duration of the possession by the Sanderses and their improving the land were significant factors the Supreme Court relied on as incompatible with having received service of process announcing an adverse interest in the property. *Id.*

And in *Min*, the moving party corroborated his denial of service with his own testimony that he had moved away from the apartment where he purportedly was served, that he had discontinued electrical service there, and that another family was living there at the time of the purported service. *See* 991 S.W.2d at 503.

Unlike in the foregoing cases, Fisher's evidence did not rise above mere denial of service by providing some independent facts or circumstances and, thus, did not

15

prevent the recitals in the officer's return from operating as a presumption of service. *See id.* (observing that when party disputing service does not offer evidence of corroborating circumstances, "the substantive consequence is that the recitals in the return become presumptively correct as a matter of law"). On this record, we cannot conclude that the trial court abused its discretion by overruling Fisher's motion for new trial.

### 3. Manner of service

Fisher also argues that the default judgment must be set aside because he was not served in accordance with the order for substituted service. Specifically, Fisher complains that the officer's return of service states only that a copy of the citation was mailed to the relevant address, whereas the order for substituted service required mailing copies of the citation, petition, and the order itself. Additionally, Fisher complains that the return appears to show that the officer completed it before receiving a green card and does not include a copy of the green card. These arguments are unavailing because they address the officer's original return of service rather than the amended return approved by the trial court.

Regarding the amended return of service, Fisher's only complaint is that it was not filed before the trial court rendered the default judgment. But that is not a requirement. Texas Rule of Civil Procedure 118 provides that a trial court may allow an amended proof of service "[a]t *any time* in its discretion." *See* TEX. R. CIV. P.

16

118 (emphasis added). Recognizing a trial court's Rule 118 discretion, Texas courts have considered post-judgment amendments to proof of process in limited circumstances.[4] The trial court's authority to grant a Rule 118 amendment extends as far as its plenary power over the judgment. *See Higginbotham v. Gen. Life & Acc. Ins. Co.*, 796 S.W.2d 695, 696 (Tex. 1990) (recognizing trial court's authority to amend proof of process in relation to motion for new trial); *LEJ Dev. Corp. v. Sw. Bank*, 407 S.W.3d 863, 868 (Tex. App.—Fort Worth 2013, no pet.) (concluding trial court may sign post-judgment order amending proof of process while it retains plenary power); *In re DC*, No. 01-11-00387-CV, 2012 WL 682289, at *6 (Tex. App.—Houston [1st Dist.] Mar. 1, 2012, pet. denied) (mem. op.) (same).

Here, HNPG sought to amend the return of service in response to Fisher's motion-for-new-trial arguments. When, as here, a timely motion for new trial is

---

[4] For instance, Texas courts have considered post-judgment amendments to proof of process in the context of motions for new trial and bill-of-review proceedings. *See Higginbotham v. General Life & Accident Ins. Co.*, 796 S.W.2d 695, 695–97 (Tex. 1990) (motion for new trial); *Gonzalez v. Tapia*, 287 S.W.3d 805, 806 (Tex. App.—Corpus Christi 2009, pet. denied) (bill of review); *see also Mylonas v. Tex. Com. Bank-Westwood*, 678 S.W.2d 519, 522–23 (Tex. App.—Houston [14th Dist.] 1984, no writ) (upholding default judgment following post-judgment amendment of return of service to show service at correct address). We note Fisher's citation to *Primate Construction, Inc. v. Silver*, 884 S.W.2d 151, 153 (Tex. 1994), for the proposition that a return of service cannot be amended after a default judgment is entered. But *Primate* involved a writ of error proceeding—a predecessor to restricted appeals. *Id.* at 152. And, generally speaking, the record in a restricted appeal consists only of those documents on file with the trial court when the default judgment was entered. *Propel Fin. Servs., LLC v. Conquer Land Utils., LLC*, 579 S.W.3d 485, 490 n.6 (Tex. App.—Corpus Christi 2019, pet. denied).

filed, the trial court retains plenary jurisdiction until thirty days after the motion is overruled, either by a written and signed order or by operation of law. TEX. R. CIV. P. 329b(e). There is no dispute the trial court's order allowing HNPG to amend its proof of service was signed within this plenary window.

Consequently, we overrule Fisher's first issue.

## B. Liquidated damages

In his second issue, Fisher asserts that the trial court erred by entering a default judgment against him without holding a hearing on damages and absent evidence "that anything Fisher did caused [HNPG's] damages." We disagree.

A no-answer default judgment operates as an admission of the material facts alleged in the plaintiff's petition except for the amount of unliquidated damages. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 930 (Tex. 2009); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). When a plaintiff's claim is liquidated, and proven by an instrument in writing, the plaintiff may be awarded damages without the necessity of a hearing or the presentation of evidence. *See* TEX. R. CIV. P. 241; *see also Dansk Express, LLC v. IPFS Corp.*, No. 01-22-00621-CV, 2023 WL 4937497, at *8 (Tex. App.—Houston [1st Dist.] Aug. 3, 2023, no pet.) (mem. op.); *Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 836 (Tex. App.—Dallas 2009, no pet.). A claim is liquidated if the amount of damages caused by the defendant can be accurately calculated from (1) the factual, as opposed to

18

conclusory, allegations in the petition, and (2) an instrument in writing. *Dansk Express*, 2023 WL 4937497, at *8. A default judgment does not establish allegations pertaining to unliquidated damages. *See Lerma*, 288 S.W.3d at 930. If damages are unliquidated or not proven by an instrument in writing, the court must hear evidence as to damages before a default judgment may be granted. TEX. R. CIV. P. 243.

Here, HNPG's petition alleged that 2017 Yale, through its agent Fisher, retained HNPG to represent it in property tax protests on a contingent-fee basis but then failed to perform its payment obligation. HNPG further alleged that Fisher was personally liable under the agreement because he misrepresented his authority when he purported to bind 2017 Yale. The petition set out the method for calculating HNPG's fee under the Tax Consultant Agreement—"HNPG was to be paid a contingent fee of 30% of any property[-]tax savings, meaning the difference between the appraised value and the final value of the property multiplied by the last known tax rate." And the exhibits attached to the petition—the ARB panel recommendation reducing the property's appraised value and HNPG's invoices that include the last known tax rate—allow calculation of 2017 Yale's property-tax savings. Because the amount of HNPG's damages could be determined from the factual allegations in the petition and the exhibits, the trial court did not err in concluding that HNPG's claim was liquidated and assessing damages without a hearing or evidence. *See* TEX. R. CIV. P. 241; *see, e.g.*, *Rooftop Grp. USA, Inc. v. Shopper Events LLC*, No.

19

14-15-01040-CV, 2017 WL 2125648, at *5 (Tex. App.—Houston [14th Dist.] May 16, 2017, pet. denied) (mem. op.). Consequently, we overrule Fisher's second issue.

## C. Pre-judgment Interest

In addition to damages, HNPG pleaded for contractual interest. Specifically, HNPG alleged that, under the terms of the contract it sought to enforce against Fisher, invoices were "due upon receipt, and the amounts bear 1.5% interest monthly after 30 days," which the trial court awarded as pre-judgment interest in the default judgment. Fisher's third issue asserts that the trial court erred in calculating pre-judgment interest based on the alleged contractual rate and, instead, should have applied the statutory interest rate.

We apply an abuse of discretion standard of review when evaluating a trial court's award of pre-judgment interest. *See DeBoer v. Attebury Grain, LLC*, 684 S.W.3d 520, 529 (Tex. App.—Eastland 2024, no pet.). But we find no abuse of discretion here. HNPG alleged a contract action against Fisher. For breach of contract, the pre-judgment interest rate is the same as the post-judgment interest rate. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 532 (Tex. 1998). And under Section 304.002 of the Texas Finance Code, post-judgment interest—and therefore pre-judgment interest—in a contract case is the lesser of the rate specified in the contract or eighteen percent a year. TEX. FIN. CODE § 304.002; *see Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 255 S.W.3d 807, 823 (Tex.

20

App.—Dallas 2008, no pet.). By awarding pre-judgment interest at the rate specified in the contract, the trial court correctly calculated pre-judgment interest. *See* TEX. FIN. CODE § 304.002(1).

Consequently, we overrule Fisher's third issue.

**D.    Briefing waiver**

The statement of issues in Fisher's appellate brief includes a fourth issue complaining that:

> Holtzapple's claims against Fisher [were] made in the alternative based upon the possibility that [Form 50] was not authorized or signed by 2017 Yale[.]  2017 Yale . . . did not deny signing the [Form 50,] and it was undisputed that it did.  Accordingly[,] the alternative theory against Fisher does not exist, and it was error to enter judgment against both 2017 Yale . . . and . . . Fisher.

Although this complaint is listed in Fisher's statement of issues, it is essentially unaddressed in the argument section of his brief. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). As best we can discern, the only statements related to the issue are a few conclusory sentences that have no citations to authority.[5] *See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500

---

[5]    Specifically, in the statement-of-the-case section, Fisher states: "The claims against Fisher were clearly plead as an alternative claim.  There was never any claim that [2017 Yale] did not signed the agreement or that Brad Parker was not authorized to sign."  In the summary-of-the-argument section, Fisher states: "[T]he theory of recovery against [him] was asserted only in the alternative, ie under a claim that a document may have been unauthorized or a forgery.  No party made such a claim at trial, and Holtzapple proceeded against 2017 Yale on its contract claims."  And in

21

(Tex. 2015) ("Failure to provide citations or argument and analysis as to an appellate issue may waive it."); *Guimaraes v. Brann*, 562 S.W.3d 521, 538 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (failure to cite legal authority or provide substantive analysis of legal issue presented results in waiver of complaint). That is, any legal support for Fisher's argument is wholly absent. We strive to reach the merits of an issue whenever reasonably possible, *see Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012), but Fisher's fourth issue presents nothing for our review. Consequently, we overrule it.

### III.   2017 Yale's Appeal

In five issues, 2017 Yale contends that several errors during the jury trial require reversal and rendition of a new judgment in its favor or a remand for a new trial. We address the issues in the order that, if sustained, would afford 2017 Yale the greatest relief. *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999); *see Khechana v. El-Wakil*, 661 S.W.3d 425, 430 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (appellate courts should decide rendition issues before remand issues).

---

the argument section, he states: "The claim against him was plead entirely in the alternative. It was undisputed that the Form 50-162 was both authorized and not a forgery, thus no theory grounded in fact existed giving rise to liability to Allen Fisher." Fisher includes a single record citation to HNPG's petition, but no citations to supporting legal authority.

## A. Sufficiency of the damages evidence

We begin with 2017 Yale's third issue challenging the "evidentiary support" for the damages awarded by the jury. Reading 2017 Yale's brief liberally, we understand this issue as challenging the legal and factual sufficiency of the evidence of HNPG's damages. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008).

The jury charge contained two measures of damages—one measure asked the jury to determine the "reasonable price for the services [HNPG] agreed to perform" as damages for 2017 Yale's breach of an implied contract with an open-price term, and the other asked the jury to determine "the reasonable value of [HNPG's] compensable work" as damages for quantum meruit.[6] For the 2018 tax year, the jury found that $13,859.82 was both (1) "a reasonable price" for HNPG's services and (2) "the reasonable value of [HNPG's] compensable work." For the 2019 tax year, the jury answered $9,000 for the same measures.

We focus on the jury's "reasonable value" findings because, for reasons that follow, the judgment can be sustained on quantum meruit alone. *See* TEX. R. APP.

---

[6] We note that 2017 Yale's brief misnumbers the damages questions in the jury charge. While 2017 Yale's brief challenges the jury's damages findings in questions 2, 3, 6, and 7, the damages findings actually are in questions 2, 3, 6, and 8. Because 2017 Yale's substantive argument plainly is an attempt to appeal the jury's finding in question 8 and not question 7, we consider the misnumbering to be a typographical error. *See, e.g.*, *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020) ("To determine whether an issue was waived, a court looks not only to the wording of the issue but the argument under each heading to assess the intent of the parties.").

23

P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

### 1. Standard of review

To decide whether the evidence is legally sufficient, we examine the record for evidence and inferences supporting the jury's finding and disregard all contrary evidence and inferences. *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 780 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). If more than a scintilla of evidence supports the jury's finding, the evidence is legally sufficient. *See id.* To decide whether the evidence is factually sufficient, we consider all the evidence in the record, both for and against the jury's finding. *See id.* at 781.

Evidence is factually sufficient if the jury's finding is not "'so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.'" *Id.* (quoting *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). As the factfinder, the jury determines the credibility of the witnesses and the weight to be given their testimony, decides whether to believe or disbelieve all or any part of the testimony, and resolves any inconsistencies in the testimony. *Ulogo v. Villanueva*, 177 S.W.3d 496, 499 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Accordingly, when there is conflicting evidence, we defer to the jury. *See id.*

## 2. Reasonable value of services for quantum-meruit recovery

Quantum meruit is an equitable remedy based on a promise implied by law to pay for beneficial services rendered and knowingly accepted. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (explaining that quantum meruit prevents party from being unjustly enriched by retaining benefits of another's performance without paying anything in return). The elements of a quantum-meruit claim include proof that: (1) valuable services were rendered or materials furnished; (2) for the defendant; (3) which the defendant accepted, used, and enjoyed; and (4) the defendant was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid. *Id.* at 732–33.

A plaintiff seeking to recover under quantum meruit must also prove the correct measure of damages, which is the reasonable value of the work performed or the materials furnished. *See id.* at 733; *see also Green Garden Packaging Co. v. Schoenmann Produce Co.*, No. 01-09-00942-CV, 2010 WL 4395448, at *7 n.5 (Tex. App.—Houston [1st Dist.] Nov. 4, 2010, no pet.) (mem. op.) (describing quantum-meruit damages as "restitution measure" and not recovery of "benefit of expected bargain"). Specific testimony about the amount of compensation a party would be entitled to for the services rendered satisfies this burden. *See Four Points Bus., Inc. v. Rojas*, No. 0-12-00413-CV, 2013 WL 4676314, at *4 (Tex. App.—Houston [1st Dist.] Aug. 27, 2013, no pet.) (mem. op.); *see also Insignia Cap.*

25

*Advisors, Inc. v. Stockbridge Corp.*, No. 08-01-00119-CV, 2002 WL 1038805, at *3 (Tex. App.—El Paso May 23, 2002, pet. denied) (mem. op., not designated for publication) (evidence of reasonable value of services may include evidence of what others received for similar services or opinion testimony of witnesses familiar with value of services, including opinion of person performing service and possibly even person benefitting). But evidence of the anticipated benefits of a contract, without more, will not support the recovery of damages for quantum meruit. *See, e.g.*, *Green Garden Packaging*, 2010 WL 4395448, at *7 (evidence of lost profits from anticipated contract was no evidence of reasonable value of plaintiff's services); *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 625 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (no evidence supported reasonable value of work performed by construction contractor when supporting calculations "represented damages for breach of contract, not for quantum meruit").

2017 Yale argues that HNPG presented no or insufficient evidence that the reasonable value of its tax-protest services was $13,859.82 for the 2018 tax year and $9,000 for the 2019 tax year. According to 2017 Yale, the only evidence of damages was Holtzapple's testimony about his "contingent-fee contract rate," which is a benefit-of-the-bargain damage that cannot be recovered under quantum meruit.

In support, 2017 Yale cites a Supreme Court of Texas case addressing whether a law firm with an alleged oral contingent-fee agreement could recover the value of

its services in quantum meruit and the appropriate measure of damages for that claim. *See Hill*, 544 S.W.3d at 732. In *Hill*, the law firm conceded the oral contingent-fee agreement was unenforceable under the statute of frauds but argued that a quantum-meruit recovery should be allowed to prevent the client's unjust enrichment. *Id.* at 734 (considering statute of frauds in TEX. GOV'T CODE § 82.065 that requires "[a] contingent fee contract for legal services" to be "in writing and signed by the attorney and client"). The Court agreed, holding that the statute of frauds did not bar the law firm's quantum-meruit claim for the reasonable value of legal services performed under the unenforceable agreement. *Id.* at 735.

However, the unenforceable agreement could not be considered as evidence of reasonable value. *Id.* at 736–37, 39. That was problematic for the law firm because its testifying expert—the only witness who put a dollar amount on the reasonable value of the legal services—had assumed the client agreed to the oral contingent-fee contract. *Id.* at 740. The Court refused to consider the expert's testimony as a matter of law and instead looked for other evidence of reasonable value. *Id.* While some witnesses had testified about the scope of the legal services, the hours worked, and the law firm's hourly rate, nobody had testified that multiplying the number of hours worked by the hourly rate was a proper method of calculating the reasonable value of the law firm's services. *Id.* Consequently, even though the hours-worked and hourly-rate testimony was some evidence of value, it

was not legally sufficient to support the specific amount found by the jury. *Id.* at 740–41. And the Court remanded the matter for a new trial. *Id.* at 744.

*Hill* is distinguishable. First, HNPG did not seek to recover fees for legal services under a contingent-fee contract that is unenforceable under a statute of frauds. Although Holtzapple represented 2017 Yale at the ARB hearing, he did not do so as an attorney. We express no opinion on whether a different statute of frauds might apply because 2017 Yale asserts none and does not appeal the sanctions order prohibiting it from proving any affirmative defenses at trial.

More importantly, although HNPG sought to recover fees at the rate specified in the Tax Consultant Agreement, there was other evidence that the fee represented the reasonable value of HNPG's tax-protest services. 2017 Yale admitted that HNPG's tax-protest services reduced the appraised value of its property. Holtzapple testified that the reduction in appraised value would translate to property-tax savings for 2017 Yale. The damages the jury awarded to HNPG represented a portion of the estimated savings to 2017 Yale. Holtzapple also testified that it was "customary" in the property-tax consulting business to "bill on [a] success-fee basis." Before going into business for himself, Holtzapple served on the HCAD board and, there, became familiar with the value of other consultants' services, which sometimes went as high as 50 percent of the estimated property-tax savings. *See, e.g.*, *Gray v. Cheatham*, 52 S.W.2d 762, 764 (Tex. App.—Austin 1932, no writ) ("[W]hat would be the

28

reasonable value of the services rendered would be what was the reasonable price paid for such service or like service in the community where such services or like services were rendered."). Considering this context, Holtzapple testified that the fees he charged on his invoices represented the reasonable value of the services he provided to 2017 Yale.

Applying the proper standard of review, we conclude there is more than a scintilla of evidence supporting the jury's findings on the reasonable value of HNPG's services for the 2018 and 2019 tax years, and therefore the evidence was legally sufficient to support the amounts the jury awarded. We further hold that the jury's findings on the reasonable value of HNPG's services for the 2018 and 2019 tax years are supported by factually sufficient evidence because they are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Consequently, we overrule 2017 Yale's third issue.

We do not address the part of 2017 Yale's third issue challenging the jury's additional damages findings as to the "reasonable price for the services [HNPG] agreed to perform" because those findings go to the alternative breach-of-implied-contract claim that is not necessary to sustain the trial court's judgment. *See also* TEX. R. APP. P. 47.1.

**B.      Directed verdict on liability for the 2018 tax year**

We turn to 2017 Yale's fourth issue complaining that the trial court erred in granting a directed verdict on quantum-meruit liability for the 2018 tax year.[7]

**1.      Standard of review**

We review a directed verdict de novo. *City of Baytown v. Schrock*, 645 S.W.3d 174, 178 (Tex. 2002). A trial court properly grants a directed verdict for the plaintiff when "reasonable minds can draw only one conclusion from the evidence." *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978). But if a fact issue exists on a material question, a directed verdict is not proper. *See id.* We consider the evidence in the light favorable to the party suffering an adverse judgment, crediting all reasonable inferences and disregarding evidence and inferences to the contrary. *Shrock*, 645 S.W.3d at 178.

**2.      Quantum meruit**

2017 Yale argues that the trial court could not direct a verdict on quantum meruit because reasonable minds could conclude that HNPG did not perform valuable services that benefited 2017 Yale, as 2017 Yale did not actually receive any tax savings. The assertion that 2017 Yale received no tax savings rests on testimony

---

[7]     2017 Yale does not challenge the jury's affirmative finding on quantum-meruit liability for the 2019 tax year.

30

that 2017 Yale did not pay taxes for the 2018 tax year. Asked whether 2017 Yale benefited from HNPG's services, Brad Parker testified:

> I would have to see the actual tax levies against the property. Payments were not made. And so, as I understand it, you don't get the benefit of tax protests if you don't pay the amount. So I'd have to see what was ultimately levied against the property to answer that.

While we agree that HNPG could not recover the reasonable value of services that did not confer any benefit on 2017 Yale, *see Carr v. Austin Forty*, 744 S.W.2d 267, 273 (Tex. App.—Austin 1987, writ denied), we disagree that the evidence raised a fact issue on whether HNPG's services were valuable to 2017 Yale. 2017 Yale does not dispute that HNPG provided services, which it accepted. For the 2018 tax year, Holtzapple testified that he filed a tax protest on 2017 Yale's behalf, reviewed the records HCAD used to determine the property's appraised value, gathered rebuttal evidence, and then represented 2017 Yale at the tax-protest hearing before the ARB.

2017 Yale's deemed admissions include an admission that the 2018 tax protest resulted in a $1,838,704 reduction of the property's appraised value. And as Holtzapple explained, tax liability for a property is calculated from the appraised value, so a reduction in the appraised value translates to a reduction in tax liability. Here, the reduction in tax liability for 2018 was estimated to be about $46,000 and thus 2017 Yale received a benefit. Even if 2017 Yale did not pay the property taxes, its tax liability decreased because of the services HNPG performed. 2017 Yale has

31

not cited, and we have not found, any authority supporting that a reduction in tax liability is not valuable.

On this record, we conclude there were no fact issues on whether HNPG performed valuable services that benefitted 2017 Yale, and thus the trial court did not err in granting the directed verdict on HNPG's quantum-meruit claim for the 2018 tax year. Consequently, we overrule 2017 Yale's fourth issue.

Our disposition of 2017 Yale's fourth issue makes it unnecessary to decide the fifth issue, which challenges the trial court's directed verdict on liability under the alternative claim for breach of an implied contract with an open price term, because the trial court's judgment can be sustained on quantum meruit alone. *See* TEX. R. APP. P. 47.1.

## C. Attorney's fees as sanctions for discovery abuses

The trial court's final judgment awards HNPG $62,782.50 in attorney's fees, plus additional contingent fees for appeals. 2017 Yale argues that HNPG cannot recover these attorney's fees because it did not submit a jury question on the reasonableness of the fees. We disagree that a jury question was required—or even appropriate—here. The trial court did not award attorney's fees to HNPG as damages on a claim; rather, it awarded fees as sanctions for 2017 Yale's pre-trial discovery abuses. There is no right to a jury trial on the amount of attorney's fees awarded as sanctions for discovery abuse. *See Brantley v. Etter*, 677 S.W.2d 503,

32

504 (Tex. 1984). The amount of attorney's fees awarded as sanctions is solely within the trial court's discretion.[8] *Id.* And 2017 Yale does not argue on appeal that the sanctions order was an abuse of the trial court's discretion. Consequently, we overrule 2017 Yale's first issue.

## D. Mistrial during closing arguments

At least seven times during closing argument, the trial court told 2017 Yale's counsel that he was talking too fast. On the third time, the trial court warned that it would subtract time from 2017 Yale's argument if counsel did not slow down. On the fifth and sixth times, the trial court followed through and subtracted time from the argument. On the final time, the trial court ended argument and told counsel he was being sanctioned "13 minutes off his 30-minute closing argument because he would not follow the Court's instructions to speak more slowly." 2017 Yale did not object when the trial court subtracted time or ended the argument early; instead, 2017 Yale moved for a mistrial after the jury retired to deliberate. According to 2017

---

[8]    2017 Yale does not cite any authority requiring attorney's fees sought as sanctions to be tried to a jury. The cases 2017 Yale relies on concern claims which allow for recovery of attorney's fees and, thus, are inapplicable. *See Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547–49 (Tex. 2009) (concluding there was no evidence to support jury's refusal to award attorney's fees); *Fuqua v. Oncor Elec. Delivery Co.*, 315 S.W.3d 552, 560 (Tex. App.—Eastland 2010, pet. denied) (examining whether jury or court must decide reasonableness and necessity of attorney's fees under TEX. CIV. PRAC. & REM. CODE § 37.009); *Unique Staff Leasing Ltd. v. Cates*, 500 S.W.3d 587, 600 (Tex. App.—Eastland 2016, pet. denied) (examining whether jury or court must decide reasonableness of attorney's fees under TEX. LAB. CODE § 408.221(c)).

33

Yale, the trial court's error in limiting argument time could only be corrected by a mistrial, which the trial court denied.

### 1. Standard of review

We review the trial court's denial of a motion for mistrial for an abuse of discretion. *Epps v. Deboise*, 537 S.W.3d 238, 249 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Even when an abuse of discretion is shown, reversal is not automatic. *See id.* at 250. We must conclude that any error probably caused the rendition of an improper judgment or prevented the appellant from properly presenting its appeal. TEX. R. APP. P. 44.1(a). To make this determination, we review the entire record. *See, e.g.*, *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992).

### 2. Harmless error

While we agree with 2017 Yale that the right to make a closing argument to the jury "is a valuable one," the trial court did not deprive 2017 Yale of that right. Rather, it reduced the time 2017 Yale had to make its argument from thirty minutes to seventeen minutes after warning counsel more than once that time might be shortened for failure to follow the court's instructions. Assuming without deciding that 2017 Yale's mistrial motion was timely and preserved for review any error by the trial court in reducing its time for closing argument, we find no showing of harm when the entire record is considered. *See* TEX. R. APP. P. 44.1(a).

Nothing in the record indicates that the seventeen minutes of argument 2017 Yale had was not enough for counsel to present the case properly and discuss all controverted issues. As we have held, the evidence was sufficient to sustain the trial court's judgment. The trial was only two days. Holtzapple and Parker were the only two witnesses to testify. And their testimony was not complicated. It occupied about 200 pages of the trial transcript and was accompanied by twelve exhibits which, collectively, are fewer than thirty pages. The jury was asked to consider the evidence and answer eight questions in the court's charge, each of which counsel addressed in his closing argument. The closing argument also addressed specific evidence, liability theories, and damages. 2017 Yale has not identified any matters counsel wished to argue but could not because of the time restriction, nor suggested what counsel would have argued, if he had more time, that would have caused the jury to render a more favorable verdict. That is, 2017 Yale has provided no suggestion of how the claimed error in reducing its argument time probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). Neither has it shown that the alleged error probably prevented it from presenting its appeal. *See* TEX. R. APP. P. 44.1(a)(2). Because our review has revealed no such harm, we overrule 2017 Yale's second issue.

## IV. Conclusion

Having overruled all of Fisher's and 2017 Yale's issues, we affirm the trial court's judgment.

Andrew Johnson
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.